[No. D057900. Fourth Dist., Div. One. Oct. 3, 2011.]

Conservatorship of the Person of JOSEPH W.
IMPERIAL COUNTY BEHAVIORAL HEALTH SERVICES, Petitioner and Respondent, v.
JOSEPH W., Objector and Appellant.

954

## Counsel

Suzanne M. Davidson, under appointment by the Court of Appeal, for Objector and Appellant.

Michael L. Rood, County Counsel, and Kyle Sand, Deputy County Counsel, for Petitioner and Respondent.

## Opinion

**McDONALD, J.**—Joseph W. appeals a judgment reestablishing a conservatorship of his person under the Lanterman-Petris-Short (LPS) Act (Welf. & Inst. Code, § 5000 et seq.).[1] Following a court (or bench) trial, the trial court found Joseph gravely disabled because, as a result of a mental disorder, he is unable to provide for his basic needs for food, clothing, or shelter. Three days later, Joseph filed a section 5350, subdivision (d), demand for a jury trial on the issue of whether he is gravely disabled. The court concluded Joseph elected to have a court trial on that issue and therefore no longer had a statutory right to a jury trial. On appeal, Joseph contends the trial court (1) erred by denying his demand for a jury trial and (2) violated his constitutional due process rights by denying his statutory right to a jury trial.[2] We conclude that, although the trial court erred by misinterpreting Joseph's request for a hearing as a request for a court trial, he waived or forfeited that error, and we affirm the judgment.

---

[1] All statutory references are to the Welfare and Institutions Code unless otherwise specified.

[2] On February 9, 2011, Disability Rights California (DRC) filed an application to file an amicus curiae brief in support of Joseph. On March 3, we issued an order stating that we would consider DRC's application with Joseph's appeal. In the exercise of our discretion, we hereby deny its application to file an amicus curiae brief.

## FACTUAL AND PROCEDURAL BACKGROUND

In April 2009, Imperial County Behavioral Health Services (County) filed an LPS (§ 5350) petition for appointment of a conservator of Joseph's person, alleging that as a result of a mental disorder, he was gravely disabled in that he was unable to provide for his basic needs for food, clothing, or shelter. On May 19, the trial court entered a judgment appointing County as Joseph's conservator for a one-year period and placing him in a closed, locked treatment facility. On May 24, 2010, the trial court issued an order accepting the parties' stipulation extending Joseph's conservatorship until June 18.

On May 25, County filed an LPS petition (Petition) for ratification of acts and retroactive reappointment of conservatorship of Joseph's person for a one-year period. The Petition alleged that Joseph was gravely disabled because, as a result of a mental disorder, he was unable to provide for his basic needs for food, clothing, or shelter. A declaration by two doctors (one psychiatrist and one psychologist) was attached to the Petition, in which they stated their opinions that Joseph was gravely disabled as a result of a mental disorder and was unable to provide for his basic personal needs for food, clothing, or shelter. Also attached to the Petition was a notice of Joseph's rights and the consequences of reestablishment of conservatorship (attachment A), which stated in part:

"1. . . . If the Conservator of the person . . . wishes to reestablish conservatorship for another year, the conservator must petition the Court to do so. Subject to a request for a court hearing by jury trial[,] the judge may, on the judge's own motion, accept or reject the conservator's petition.

"2. If the conservator petitions to reestablish conservatorship, the conservatee, . . . the conservatee's attorney . . . shall be notified. If any of them request it, there shall be a court hearing or a jury trial, whichever is requested, on the issue whether the conservatee is still gravely disabled and in need of conservatorship. . . . [¶] . . . [¶]

"4. If the conservator files a petition to reestablish your conservatorship and you object, objection shall be made by filing a written Request for Hearing with the Clerk of the Court within fifteen (15) days of mailing to you of the Notice of Filing of Petition to Reappoint Conservator(s). Otherwise, the Court may, on its own motion, accept or reject the petition. [¶] . . . [¶]

"6. If you request a hearing to object to the petition, you have the right to appear at the hearing for reestablishing your conservatorship and to oppose the petition to reestablish your conservatorship. You have the right to an attorney, and the court must appoint, if it has not already done so, the Public Defender or other attorney for you within five days of the date of the petition. . . . [¶] . . . [¶]

"8. You have a right to demand a court or jury trial on the issue whether you are gravely disabled. Demand for court or jury trial must be made within five days following the hearing you may request. If you demand a court or jury trial before the date of the hearing, such demand constitutes a waiver of the hearing. The court or jury trial must commence within ten days of the date of the demand . . . . The burden is on the petitioner [(County)] to prove beyond a reasonable doubt that you are gravely disabled. The verdict by a jury trial must be unanimous." Joseph and the Imperial County Public Defender (his appointed counsel) were served with the Petition and its attachments.

On May 25, Joseph, through his counsel, filed an objection to the Petition and "request[ed] a hearing on the matter." He also served on County a notice of the hearing set for June 14.

On June 14, the trial court announced the matter and stated that Joseph and his counsel were present. The court stated: "We're here on a reappointment. We have an objection filed May the 25th. Are we ready to proceed?" County's counsel confirmed she was ready and called her first witness, Vijay Chennamchetty, a psychiatrist, to testify. He testified that he had interviewed Joseph twice and reviewed his (Joseph's) medical records showing his condition had been diagnosed as schizoaffective disorder. Chennamchetty expressed his opinion that Joseph suffered from a mental illness and was gravely disabled. Joseph's counsel then extensively cross-examined Chennamchetty regarding his opinion.[3] County's counsel then called Joseph to testify and extensively questioned him on direct examination.[4] Joseph's counsel then cross-examined him. County's counsel then recalled Chennamchetty and conducted redirect examination. Joseph's counsel conducted recross-examination of Chennamchetty. County's counsel then called Patricia Carl, a County employee, who testified regarding statements Joseph made at the end of a November 2009 court hearing.

County's counsel then rested. Joseph's counsel stated: "I don't have any witnesses." Joseph's counsel made his closing arguments opposing the reestablishment of the conservatorship and then County's counsel made her rebuttal arguments in favor of reestablishment. Following counsel's closing arguments, the trial court stated:

"This is a close case. The threshold issue of course is whether or not [Joseph] suffers from a mental illness. And I believe it's been shown that he does have schizoaffective disorder of schizophrenia. So the question then

---

[3] The cross-examination of Chennamchetty by Joseph's counsel is set forth in 16 pages of the reporter's transcript.

[4] Joseph's direct examination is set forth in 23 pages of the reporter's transcript.

becomes whether by reason of that mental illness he's able to provide an assessment to provide food, clothing, shelter.

"And we get into sort of a tight spot in these cases when a person who is able to provide those things while on medication, the question then becomes will they continue with the medication after they're not on conservatorship. And I think it's been shown, frankly, beyond a reasonable doubt, that [Joseph] at least at this point will not." The trial court overruled Joseph's objection to the Petition and reestablished the conservatorship. The court entered a judgment finding Joseph gravely disabled because, as a result of a mental disorder, he was unable to provide for his basic needs for food, clothing, or shelter. The court reestablished Joseph's LPS conservatorship for an additional one-year period and ordered that he be placed in a closed, locked treatment facility.

On June 17, Joseph, through his counsel, "demand[ed] a jury trial on the issue of grave disability pursuant to . . . § 5350[, subdivision] (d)." On July 19, after hearing arguments of counsel, the trial court confirmed its judgment reestablishing the conservatorship. The court stated: "The request for hearing filed by [Joseph] on May 25th elected a court trial and there is no statutory right to have a jury trial now." Joseph timely filed a notice of appeal.

## DISCUSSION

### I

### *Mootness*

County asserts Joseph's appeal should be dismissed because he no longer is subject to a conservatorship and therefore his appeal is moot. On or about January 20, 2011, we granted Joseph's December 6, 2010, request for judicial notice of the trial court's order terminating his conservatorship. County argues that because we cannot grant any effective relief to Joseph, we should dismiss his appeal as moot. (See *Eye Dog Foundation v. State Board of Guide Dogs for the Blind* (1967) 67 Cal.2d 536, 541 [63 Cal.Rptr. 21, 432 P.2d 717].)

■ Because Joseph is no longer a conservatee, we cannot grant him any effective relief. Nevertheless, we agree with Joseph that because the issue presented by his appeal is capable of recurring, but evading review, and involves a matter of general public interest, we should exercise our discretion to address the merits of his appeal, in which he contends he was erroneously denied the right to a jury trial after requesting a hearing under section 5362.

"Because a conservatorship is relatively brief (one year) in comparison with the appellate process, we find it likely that this issue . . . is one capable of recurring, yet of evading review because of mootness." (*Conservatorship of Susan T.* (1994) 8 Cal.4th 1005, 1011, fn. 5 [36 Cal.Rptr.2d 40, 884 P.2d 988].) Because procedures for reestablishment of conservatorships "are of great public interest" and a reestablishment issue "could perpetually evade appellate scrutiny" (*Conservatorship of Moore* (1986) 185 Cal.App.3d 718, 725 [229 Cal.Rptr. 875]), we exercise our discretion to consider, and address the merits of, this appeal. (*Ibid.*; *Conservatorship of Rodney M.* (1996) 50 Cal.App.4th 1266, 1269, fn. 4 [58 Cal.Rptr.2d 513] ["Although the [moot-ness] claim may be technically correct, we exercise our inherent discretion to decide the . . . issue, insofar as it is of significant public interest, is certain to recur in other cases, and may continue to evade review."]; *Conservatorship of Kevin M.* (1996) 49 Cal.App.4th 79, 86–87 [56 Cal.Rptr.2d 765].)

II

*LPS Act Generally*

■ "The LPS Act governs the involuntary detention, evaluation, and treatment of persons who, as a result of mental disorder, are dangerous or gravely disabled. (§ 5150 et seq.) The Act authorizes the superior court to appoint a conservator of the person for one who is determined to be gravely disabled (§ 5350 et seq.), so that he or she may receive individualized treatment, supervision, and placement (§ 5350.1). As defined by the Act, a person is 'gravely disabled' if, as a result of a mental disorder, the person 'is unable to provide for his or her basic personal needs for food, clothing, or shelter.' (§ 5008, subd. (h)(1)(A).)" (*Conservatorship of John L.* (2010) 48 Cal.4th 131, 142 [105 Cal.Rptr.3d 424, 225 P.3d 554].)

■ "The procedures for establishing a conservatorship include a number of requirements pertaining to notice, hearing and trial rights, and other matters. Specifically, the petition for appointment of a conservator of the person and the citation for conservatorship must be served upon the proposed conservatee at least 15 days before the scheduled hearing date, and the proposed conservatee must be given notice of the privileges and rights subject to deprivation as part of the conservatorship. (§ 5350; Prob. Code, §§ 1823, 1824.) A hearing must be held within 30 days of the date of the petition, and the court must 'appoint the public defender or other attorney for the . . . proposed conservatee within five days after the date of the petition.' (§ 5365.) The proposed conservatee 'shall have the right to demand a court or jury trial on the issue whether he or she is gravely disabled,' but must do so before or within five days following the hearing on the conservatorship

petition. (§ 5350, subd. (d).) The party seeking imposition of the conservatorship must prove the proposed conservatee's grave disability beyond a reasonable doubt, and a jury verdict finding such disability must be unanimous. [Citation.] ▉ An LPS conservatorship automatically terminates after one year, and reappointment of the conservator must be sought by petition. (§ 5361.)" (*Conservatorship of John L., supra*, 48 Cal.4th at p. 143.)

▉ If the conservator files a petition to reestablish the conservatorship for another year, "[t]he conservatee and the conservatee's attorney are given at least 60 days' notice of the pending expiration, and 15 days' notice of the hearing date for reestablishment of the conservatorship. (§§ 5362, subd. (a), 5365; Prob. Code, § 1824 . . . .) These notices include a statement informing the conservatee of the potential disabilities and the due process rights associated with establishment of a conservatorship, including the right to counsel and the right to request and appear at a court hearing or jury trial to contest reestablishment." (*Conservatorship of Deidre B.* (2010) 180 Cal.App.4th 1306, 1312 [103 Cal.Rptr.3d 825], fns. omitted.) In *Deidre B.*, we explained: "The reestablishment hearing is conducted according to the same rules that govern the initial establishment of a conservatorship. (§§ 5350, subd. (d), 5362, subds. (a), (b); [citations].) The state has the burden to prove beyond a reasonable doubt that the conservatee remains gravely disabled. [Citations.] *The conservatorship may be reestablished in summary fashion at an initial court hearing, or, upon request within five days of the initial hearing, through a full court or jury trial.* (§§ 5350, subd. (d), 5365, 5362, subd. (b); [citations].)" (*Ibid.*, fn. omitted & italics added.) However, if the conservatee does not request a hearing or trial, "the judge may, on his or her own motion, accept or reject the conservator's petition." (§ 5362, subd. (b).)

### III

*Interpretation of Term "Court Hearing" in Section 5362, Subdivision (b)*

Joseph contends the trial court erred by interpreting his request for a hearing on the Petition as a request for a court trial.

### A

After the Petition was filed by County to reestablish Joseph's conservatorship for another one-year period, Joseph filed an objection to the Petition and "request[ed] a hearing on the matter." He also served on County a notice of the hearing set for June 14.

On June 14, the trial court announced the matter and proceeded to conduct a court (or bench) trial on the Petition. Joseph and his counsel were present.

Without any objection by Joseph or his counsel to proceeding with the trial, County presented the testimonies of its psychiatrist (Chennamchetty), Joseph, and a percipient witness (Carl). Joseph's counsel cross-examined Chennamchetty and Joseph and waived cross-examination of the percipient witness. Both County's counsel and Joseph's counsel then gave closing arguments on the issues of whether Joseph was gravely disabled and whether the conservatorship should be reestablished. The trial court overruled Joseph's objection to the Petition and reestablished the conservatorship. The court entered a judgment finding Joseph was gravely disabled because, as a result of a mental disorder, he was unable to provide for his basic needs for food, clothing, or shelter. It reestablished Joseph's LPS conservatorship for an additional one-year period and ordered he be placed in a closed, locked treatment facility.

On June 17, Joseph, through his counsel, "demand[ed] a jury trial on the issue of grave disability pursuant to . . . § 5350[, subdivision] (d)." On July 19, after hearing arguments of counsel, the trial court confirmed its judgment reestablishing the conservatorship. The court stated: "The request for hearing filed by [Joseph] on May 25th elected a court trial and there is no statutory right to have a jury trial now."

B

Joseph asserts the trial court misinterpreted the term "court hearing" in section 5362, subdivision (b), as meaning a "court trial." Therefore, because he requested only a hearing, he retained his right to demand a jury trial under section 5350, subdivision (d), on the factual question of whether he was gravely disabled.

 The California Supreme Court has set forth general rules for interpreting language in a statute: "We begin with the fundamental rule that a court 'should ascertain the intent of the Legislature so as to effectuate the purpose of the law.' [Citation.] In determining such intent '[t]he court turns first to the words themselves for the answer.' [Citation.] We are required to give effect to statutes 'according to the usual, ordinary import of the language employed in framing them.' [Citations.] 'If possible, significance should be given to every word, phrase, sentence and part of an act in pursuance of the legislative purpose.' [Citations.] 'When used in a statute [words] must be construed in context, keeping in mind the nature and obvious purpose of the statute where they appear.' [Citations.] Moreover, *the various parts of a statutory enactment must be harmonized by considering the particular clause or section in the context of the statutory framework as a whole.*" (*Moyer v. Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224], italics added.)

Section 5350 provides for the appointment of a conservator for any person gravely disabled as a result of a mental disorder. "The procedure for establishing, administering, and terminating a conservatorship under this chapter [(LPS Act)] shall be the same as that provided in [Probate Code section 1400 et seq.], except as [otherwise provided in section 5350]." (§ 5350.) Section 5350, subdivision (d), provides:

"The person for whom conservatorship is sought shall have the *right to demand a court or jury trial on the issue whether he or she is gravely disabled. Demand for court or jury trial shall be made within five days following the hearing on the conservatorship petition.* If the proposed conservatee demands a court or jury trial before the date of the hearing as provided for in Section 5365, the demand shall constitute a waiver of the hearing.

"Court or jury trial shall commence within 10 days of the date of the demand . . . .

"*This right shall also apply in subsequent proceedings to reestablish conservatorship.*"[5] (Italics added.)

■ Section 5362, subdivision (a), sets forth the substance of a notice that the superior court clerk must send to a conservatee and his or her counsel at least 60 days before the termination of the one-year period of an existing conservatorship. That notice shall inform them that "[i]f the conservator petitions to reestablish conservatorship[,] the conservatee . . . [and] the conservatee's attorney . . . shall be notified. *If any of them request it, there shall be a court hearing or a jury trial, whichever is requested,* on the issue of whether the conservatee is still gravely disabled and in need of conservatorship." (§ 5362, subd. (a), italics added.)

Section 5362, subdivision (b), provides in pertinent part: "*Subject to a request for a court hearing or jury trial,* the judge may, on his or her own motion, accept or reject the conservator's petition." (Italics added.)

■ Joseph argues the trial court erred in interpreting and relying on the language in section 5362, subdivision (b), in concluding that his request for a hearing on the Petition was an election of a court trial in lieu of a jury trial. In so arguing, he apparently asserts the term "hearing," as used in sections 5350, subdivision (d), and 5362, subdivision (b), does not mean a "trial" and therefore his request for a hearing on the Petition was *not* a request for a

---

[5] Section 5365 provides: "*A hearing shall be held on all petitions* under this chapter within 30 days of the date of the petition. The court shall appoint the public defender or other attorney for the conservatee or proposed conservatee within five days after the date of the petition." (Italics added.)

court (or jury) trial. In interpreting the term "court hearing" in section 5362, subdivision (b), we apply the rules for statutory interpretation and the rule that statutes must be harmonized with other statutes within an act.[6] (*Moyer v. Workmen's Comp. Appeals Bd., supra*, 10 Cal.3d at p. 230.) Because section 5350 also deals with LPS conservatorship petitions and proceedings, we must harmonize the provisions of section 5350 with those of section 5362. This is particularly essential because section 5350, subdivision (d), provides: "This right [(to demand a court or jury trial within five days after a hearing on the petition)] shall also apply in subsequent proceedings to reestablish conservatorship." Harmonizing section 5362, subdivision (b), with section 5350, subdivision (d), we conclude a conservatee may first request a hearing on a reestablishment petition and subsequently (i.e., within five days after the hearing) may demand a court or jury trial on the issue of whether he or she is gravely disabled under the LPS Act. Alternatively, a conservatee may object to a reestablishment petition and demand a court or jury trial, without first requesting an initial hearing on the petition, and thereby waive his or her right to that hearing. (§ 5350, subd. (d) ["If the proposed conservatee demands a court or jury trial before the date of the hearing as provided for in Section 5365, the demand shall constitute a waiver of the hearing."].) Finally, in the event the conservatee does not request either a hearing or a trial, the trial court may, on its own motion, accept or reject the reestablishment petition.[7] (§ 5362, subd. (b).)

■ Therefore, based on our harmonizing interpretation of sections 5350 and 5362, the terms "hearing" in section 5350, subdivision (d), and "court hearing" in section 5362, subdivision (b), have the same meaning. In the context of those statutes, "hearing" and "court hearing" have the meaning of a summary-type proceeding short of a "trial." Our interpretation is consistent with our prior statement in *Deidre B.* that "[t]he conservatorship may be reestablished *in summary fashion at an initial court hearing*, or, upon request within five days of the initial hearing, through a full court or jury trial. (§§ 5350, subd. (d), 5365, 5362, subd. (b); [citations].)" (*Conservatorship of Deidre B., supra*, 180 Cal.App.4th at p. 1312, italics added.) Furthermore, in the context of sections 5350 and 5362, the terms "hearing" and "court hearing" have a meaning that is mutually exclusive of the terms "court trial" and "jury trial." In *Conservatorship of Martha P.* (2004) 117 Cal.App.4th 857,

---

[6] Construction of statutory language is a question of law we decide de novo or independently. (*People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 432 [101 Cal.Rptr.2d 200, 11 P.3d 956]; *In re Clarissa H.* (2003) 105 Cal.App.4th 120, 125 [129 Cal.Rptr.2d 223].)

[7] In this respect, the procedures for determining an initial conservatorship petition and a reestablishment petition differ. Under sections 5350 and 5365, a hearing on an initial conservatorship petition *must* be held before the trial court may decide the petition, whether or not the proposed conservatee requests one. In contrast, under section 5362, subdivision (b), a hearing on a reestablishment petition is required *only if* the conservatee requests one.

861 [12 Cal.Rptr.3d 142], we stated: "A conservatorship under the Act may be reestablished annually following *a hearing or a trial* at which the conservatee is entitled to the same procedural safeguards as those provided for establishing the original one-year conservatorship. (§§ 5350, subd. (d), 5362.) The demand for a court or jury trial in subsequent proceedings to reestablish conservatorship under the Act must 'be made within five days following the hearing on the conservatorship petition.' (§ 5350, subd. (d).)" (Italics added.) In short, in an LPS reestablishment proceeding, a request for a hearing does *not* constitute a demand for a court or jury trial (absent a statement by the conservatee or his or her counsel expressing a contrary intent).[8]

We acknowledge the meanings of the terms "trial" and "hearing" can vary depending on the particular context in which they are used and can, in certain circumstances, overlap. (See, e.g., *In re Marriage of Dunmore* (1996) 45 Cal.App.4th 1372, 1377 [53 Cal.Rptr.2d 450] ["The archetypal 'trial' occurs when all of the issues tendered by the pleadings are heard before a trier of fact resulting in a decision upon which is entered one final judgment. . . . [¶] . . . [¶] In some situations a hearing may count as a trial for purposes of the dismissal statutes even though no issues of fact are determined."]; *Lewis v. Superior Court* (1999) 19 Cal.4th 1232, 1247 [82 Cal.Rptr.2d 85, 970 P.2d 872] [the term "hearing" does not necessarily encompass oral presentations; a statutory "hearing" does not require an opportunity for oral presentation unless the context or other language shows a contrary intent]; *People v. Tilbury* (1991) 54 Cal.3d 56, 60–61 [284 Cal.Rptr. 288, 813 P.2d 1318] [Pen. Code, § 1026.2, subd. (e), requires only a court hearing regarding a committed person's outpatient placement and does not show any intent to require a jury trial]; *In re James Q.* (2000) 81 Cal.App.4th 255, 263 [96 Cal.Rptr.2d 595] [in juvenile dependency context, a hearing includes the opportunity to be heard, to adduce testimony from witnesses, and the right to cross-examine and confront witnesses]; *City of Pasadena v. Superior Court* (1931) 212 Cal. 309, 313 [298 P. 968] [" 'A trial is the examination before a competent tribunal, according to the law of the land, of the facts or law put in issue in a cause for the purpose of determining such issue. When a court hears and determines any issue of fact or of law for the purpose of determining the rights of the parties, it may be considered a trial.' "], disapproved on another ground in *Carney v. Simmonds* (1957) 49 Cal.2d 84, 88–92 [315 P.2d 305]; Code Civ. Proc., § 581, subd. (a)(6) ["A trial shall be deemed to actually commence at the beginning of the opening statement or argument of any party or his or her counsel, or if there is no opening statement, then at the

---

[8] If the Legislature disagrees with our statutory interpretation, it can clarify its intent by amending sections 5350 and 5362 to exclude the right to request an initial, summary-type hearing on a reestablishment petition and provide a conservatee with the right to request only a court trial *or* a jury trial if he or she objects to the petition.

time of the administering of the oath or affirmation to the first witness, or the introduction of any evidence."].)

Nevertheless, as discussed above, we conclude that, in harmonizing the language expressed in sections 5350, subdivision (d), and 5362, subdivision (b), the Legislature did *not* intend that the term "hearing" include a "trial," whether a court trial or jury trial. Therefore, the trial court erred in interpreting the term "court hearing" in section 5362, subdivision (b), as meaning a court trial and, as a result, construing Joseph's request for a hearing on the Petition as a demand for a court trial.

## IV

### *Waiver of Error*

Although the trial court erred in interpreting Joseph's request for a hearing on the Petition as a demand for a court trial, we conclude Joseph waived or forfeited that error by not objecting to it below and, instead, appearing at, and fully participating in, the court trial.[9] Had Joseph or his counsel timely objected to the trial court's erroneous interpretation of his request for a hearing, the court would have had the opportunity to correct that error and conduct only a summary-type hearing on the Petition. However, because Joseph and his counsel failed to object to proceeding with the court trial and participated in that trial through its ultimate conclusion, Joseph is deemed to have waived or forfeited that error, along with his statutory right to a jury trial had only a summary hearing been first conducted.

As County asserts, sections 5350, subdivision (d), and 5362, subdivision (b), when construed together and harmonized, provide that a conservatee has the right to a court trial *or* a jury trial, but not both. Joseph does not appear to expressly assert he has the statutory right to both a court trial *and* a jury trial. In any event, neither case law nor logic would support such an assertion. A litigant cannot participate in a court trial and then, if not satisfied by its result, demand a jury trial on the same issue. The California Supreme Court stated: "[I]t is well established that '. . . a party cannot without objection try his case before a court without a jury, lose it and then complain that it was not tried by jury. [Citation.]' [Citations.] As stated in [*Tyler v.*

---

[9] To the extent Joseph argues the June 14, 2010, proceeding constituted only an initial hearing under sections 5350 and 5362 and not a "trial," we reject that argument. Based on our interpretation of those statutes, a "hearing" is a summary-type proceeding short of a "trial." Joseph has not presented any substantive argument on appeal persuading us that the June 14 proceeding constituted only an initial, summary-type hearing, and not a court trial, under sections 5350 and 5362.

*Norton* (1973) 34 Cal.App.3d 717, 722 [110 Cal.Rptr. 307]], wherein defendants proceeded to try the case before a judge without objecting to the absence of a jury, 'Defendants cannot play "Heads I win. Tails you lose" with the trial court.' " (*Taylor v. Union Pac. R.R. Corp.* (1976) 16 Cal.3d 893, 900 [130 Cal.Rptr. 23, 549 P.2d 855].) Because plaintiffs' counsel in *Taylor* neither demanded a jury trial nor objected to the court's (erroneous) ruling that their prior waiver of a jury trial remained in effect, the court concluded plaintiffs could not raise that contention on appeal. (*Id.* at p. 901.)

In *Glogau v. Hagan* (1951) 107 Cal.App.2d 313, 316 [237 P.2d 329], the court stated: "If a party goes to a trial without apprising the court of his demand for a jury trial he is deemed to have waived such right. [Citation.] Since the record discloses no actual request for a jury at the opening of the trial, [defendant] is presumed to have waived his claim for a jury." (See also *Pink v. Slater* (1955) 131 Cal.App.2d 816, 817 [281 P.2d 272]; *City of Los Angeles v. Zeller* (1917) 176 Cal. 194, 199 [167 P. 849] ["[W]here parties appear and go to trial without objection before a court, they will be deemed to have waived a trial by jury."]; *Ferrea v. Chabot* (1898) 121 Cal. 233, 234–235 [53 P. 689] [plaintiff waived right to jury trial by participating in trial without requesting a jury]; *Boston Tunnel Co. v. McKenzie* (1885) 67 Cal. 485, 490 [8 P. 22] [defendants waived their right to jury trial by appearing at court trial without objecting and demanding jury trial]; cf. 1 Cal. Trial Practice: Civil Procedure During Trial (Cont.Ed.Bar 3d ed. 2011) § 8.18, p. 410 ["When no objection is raised . . . or the party claiming error has not otherwise made that party's position on the issue of the right to a jury trial fully known to the court, appellate review of a ruling either granting or denying a jury trial will be denied."].)

Based on the above authorities, Joseph waived or forfeited his statutory right to a jury trial on the issue of his grave disability under the LPS Act by appearing with his counsel at, and fully participating in, the court trial on the Petition without objecting to the court's misinterpretation of his request for a hearing and without either (1) expressly requesting only a summary-type, initial hearing (and thereby preserving his right to subsequently demand a court or jury trial) or (2) demanding a jury (and not a court) trial. By not timely objecting to, and instead fully participating in, a court trial, Joseph impliedly consented to a court trial and thereby waived his right to a jury trial. (See also *Keener v. Jeld-Wen, Inc.* (2009) 46 Cal.4th 247, 264 [92 Cal.Rptr.3d 862, 206 P.3d 403] [forfeiture rule generally applies in all civil and criminal proceedings and is designed to deter gamesmanship]; *People v. Simon* (2001) 25 Cal.4th 1082, 1103 [108 Cal.Rptr.2d 385, 25 P.3d 598] [constitutional or other right may be forfeited by failing to timely assert it; purpose of doctrine of waiver or forfeiture is to encourage a party to bring errors to attention of trial court so they may be corrected or avoided]; Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter

Group 2010) ¶¶ 8:249, p. 8-165 (rev. # 1, 2009) ["Appellants may be held to have *waived* a claim of error either by affirmative conduct or by failure to take proper steps in the trial court to avoid or cure the error."], 8:261, p. 8-165 (rev. # 1, 2009) [waiver by acquiescence in the error], 8:264, p. 8-167 (rev. # 1, 2009) ["A claim of error may also be waived through *inaction* which prevented the trial court from avoiding or curing the error . . . ."].) Had Joseph or his counsel timely objected to the trial court's misinterpretation of his request for a hearing on the Petition, the court could have avoided or cured that error and conducted only a summary-type, initial hearing instead of a court trial, preserving Joseph's section 5350, subdivision (d), right to subsequently demand a court or jury trial within five days thereafter. (§§ 5350, subd. (d), 5362, subd. (b).)

 Because Joseph waived or forfeited his claim that the trial court erred by misinterpreting his request for a hearing and instead conducting a court trial, we likewise conclude he waived or forfeited his claim that the trial court erred by denying his subsequent demand for a jury trial on the issue of his grave disability under the LPS Act. In any event, Joseph does not cite any case holding that a conservatee or proposed conservatee under the LPS Act has a statutory right to both a court trial *and* a jury trial on the issue of grave disability. On the contrary, section 5350, subdivision (d), provides that a conservatee or proposed conservatee "shall have the right to demand a court *or* jury trial on the issue whether he or she is gravely disabled." (Italics added.) Joseph has not cited, and we are unaware of, any case or other authority showing the Legislature intended the disjunctive "or" to be, instead, interpreted as the conjunctive "and," as used in section 5350, subdivision (d). (*In re Jesusa V.* (2004) 32 Cal.4th 588, 622–623 [10 Cal.Rptr.3d 205, 85 P.3d 2] [because the word "or" ordinarily has a disjunctive meaning, its unnatural conjunctive meaning applies in construing statutory language only when necessary to carry out clear legislative intent in the context of the statute].)

## V

### Due Process Rights

Joseph contends that because the trial court erred by denying his demand for a jury trial, the court also violated his constitutional due process rights. However, because we concluded above that Joseph waived or forfeited his claims that the trial court erred by conducting a court trial and denying his subsequent request for a jury trial, he likewise cannot raise on appeal his due process claim based on those underlying errors.

## DISPOSITION

The judgment is affirmed.

Haller, Acting P. J., and Irion, J., concurred.